UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| YURI CHACHANKO,<br><br>               Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | 5:17-CV-05029-KES<br><br><br>MEMORANDUM OPINION AND<br>ORDER DISMISSING PETITION FOR<br>WRIT OF HABEAS CORPUS |

Plaintiff, Yuri Chachanko, moves to vacate, set aside, or correct his sentence because of a *Johnson* claim under 28 U.S.C. § 2255. Docket 1. Respondent, the United States of America, opposes the motion and moves to dismiss Chachanko's petition. Docket 15. For the reasons that follow, the court dismisses Chachanko's petition.

## BACKGROUND

Chachanko was indicted on fifteen counts in the United States District Court for the District of South Dakota, Western Division, on December 13, 2006. *USA v. Chachanko*, 5:06-CR-50117-KES-1 (CR Docket) 1. Included in the indictment, as relevant here, were five counts charging Interference with Commerce by Robbery under 18 U.S.C. §§ 1951 and 2, and five counts charging Use and Carrying of a Firearm During and In Relation to a Crime of Violence under 18 U.S.C. §§ 924(c)(1) and 2. *Id.*

On July 10, 2008, Chachanko entered into a plea agreement with the government and pleaded guilty to Count II of the Indictment, which charged

Use and Carrying of a Firearm During and In Relation to a Crime of Violence, 18 U.S.C. §§ 924(c)(1) and 2. CR Dockets 293, 296. As a result of Chachanko's guilty plea, and due to a prior conviction under 18 U.S.C. § 924(c) in the United States District Court for the District of Montana, Chachanko faced a mandatory minimum sentence of 25 years in prison and a maximum sentence of life. CR Docket 293. This court sentenced Chachanko to 300 months imprisonment, followed by 5 years of supervised release. CR Docket 297 (judgment). Chachanko did not appeal the court's judgment.

On April 17, 2016, Chachanko mailed a letter to the Federal Public Defender's Office (FPD) in Rapid City, South Dakota. Docket 9-1 at 3. The FPD, which previously represented Chachanko, received the letter on April 25, 2016. *Id.* The purpose of Chachanko's letter was to seek assistance in understanding whether the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson I*) applied to him.[1] *Id.* Chachanko sent

---

[1] In full, Chachanko's letter (Docket 9-1 at 3) reads as follows:

My name is Yuri Chachanko. I was convicted and sentenced in Federal Court at Rapid City, S.D. The Federal Defenders Office represented me.
I am curious to know more about the Johnson v. U.S. case and if it applies to me.
I'm not a career criminal but I heard that there might be relief for Hobbs Act-Robbery and 924c (sic) committing a violent felony with a firearm cases, is that true?
Could you please send me some information and paperwork so I could file before the June deadline.
I don't know much about any of this, would you please give me some assistance and advise (sic).
Is there any changes in the Hobbs Act-Robbery statute? Is it still considered a violent felony?
I appreciate your help. Thank You.

the letter because he had "heard that [under *Johnson I*] there might be relief for Hobbs Act-Robbery and 924c (sic) committing a violent felony with a firearm cases[.]" *Id.* Although Chachanko's letter notes his inexperience with the law, he specifically requested that the FPD "please send me some information and paperwork so I could file before the June deadline." *Id.*

At the time Chachanko mailed his April 17, 2016 letter, he was incarcerated at the United States Penitentiary located in Atlanta, Georgia (USP Atlanta). Docket 9-1 at 2; *see also* Docket 8 ¶ 11. While incarcerated at USP Atlanta, Chachanko was sometimes housed in a special housing unit (SHU). *See* Docket 8 ¶ 12. One of the periods that Chachanko was housed in a SHU at USP Atlanta was between March 2015 and March 2017. *Id.*

The FPD responded to Chachanko on May 2, 2016, in a letter from Rachael Steenholdt, a research and writing attorney with the FPD. Docket 9-2. Steenholdt's letter thanked Chachanko for his inquiry regarding the possible applicability of *Johnson I* to his case and informed him that her office was "reviewing all potentially eligible cases in North Dakota and South Dakota." *Id.* Steenholdt's letter continued by noting that if the FPD "conclude[s] that you are eligible, we will file an appropriate motion to reduce your sentence within one year of the *Johnson* decision which is the deadline to file." *Id.* The letter further stated that if the FPD concluded that Chachanko was not eligible for a reduction of his sentence under *Johnson I*, "we will let you know." *Id.* Steenholdt's letter to Chachanko concluded with the following request: "Please

be patient; we will do what we can to reduce your sentence if possible and be in touch." *Id.*

On June 15, 2016, the FPD sent Chachanko a follow-up letter, signed by Steenholdt, stating that based on the FPD's review of Chachanko's case, the FPD concluded that Chachanko was "not eligible" for a sentence reduction under *Johnson I* "because recent Eighth Circuit case law has held that a Hobbs Act robbery is a crime of violence under the force clause of 924(c)." Docket 9-3. The FPD's letter continued: "We will not file any motion seeking to reduce your sentence as a result. If you want to file a motion on your own because you disagree with our conclusion, you certainly can do so. We have included instructions on how to file your own [motion under §] 2255." *Id.*

Chachanko did not receive the FPD's June 15, 2016 letter informing him that the FPD would not be filing a motion to reduce his sentence on his behalf. Docket 8 ¶ 12; Docket 10 ¶¶ 5-6 (Affidavit of Rachael Steenholdt). The FPD's June 15, 2016 letter was mailed to Chachanko at USP Atlanta via Federal Express but was returned to the FPD unopened. Docket 10 ¶ 6. Although it is not clear why Chachanko's letter was returned to the FPD unopened, it was sent to Chachanko during the time when he was housed in a SHU at USP Atlanta. *See* Docket 8 ¶¶ 11, 12.

On or about August 24, 2016, while Chachanko was still housed in a SHU at USP Atlanta, he was given permission to set up a phone call with

Steenholdt.[2] Docket 8 ¶ 14; Docket 10 ¶¶ 7-8. During the phone call, Steenholdt informed Chachanko for the first time that the FPD had not filed a motion to reduce his sentence on his behalf. Docket 10 ¶ 8. Steenholdt also told Chachanko that the June 15, 2016 letter sent to him by the FPD had been rejected and was returned to the FPD unopened. *Id.* According to Chachanko, because the FPD did not inform him prior to the June deadline that it would not be filing a *Johnson I* claim, he assumed that the FPD had filed a *Johnson I* claim on his behalf. Docket 1-1 at 1.

At some point in early March 2017, Chachanko got out of the SHU at USP Atlanta and was transferred to the Federal Correctional Institution in Greenville, Illinois (FCI Greenville). *See* Docket 1 (Chachanko's motion to vacate lists the FCI Greenville as his place of confinement). And on April 3, 2017, according to Chachanko, he was able to get in contact with the Federal Defenders Office in Montana for the first time and explain his "South Dakota situation" to them.[3] Docket 1-1 at 2. Chachanko claims that after explaining

---

[2] Although it is not entirely clear who organized the phone call between Chachanko and Steenholdt, Chachanko claims that Steenholdt organized the phone call. *See* Docket 1-1 at 1 ("Then one day my counselor came by and told me my lawyer wanted to talk to me and he pulled me out of my cell and we called the South Dakota Lawyer who was reviewing my case.").

[3] It appears from Chachanko's letter in support of his motion to vacate that Chachanko contacted the Office of the Federal Defenders of Montana because that office represented him when he was convicted under 18 U.S.C. § 924(c) in the District of Montana. *See* Docket 1-1 at 1. Chachanko's letter also indicates that the Federal Defenders of Montana filed a motion to vacate Chachanko's sentence under *Johnson I* in the District of Montana. *Id.* That claim was denied in a written order. *See United States v. Chachanko*, CV 16-96-BLG-SPW, 2017 WL 5897013 (D. Mont. Nov. 29, 2017).

his "South Dakota situation" to the Montana Federal Defenders Office, he was informed that he might have a claim under *Johnson I* and was told that he "should file right away a [motion under §] 2255 and try to get in court by claiming [equitable] tolling." *Id.*

Chachanko filed his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 on April 13, 2017.[4] Docket 1. In a handwritten letter accompanying his motion, Chachanko outlines most of the facts described above. *See* Docket 1-1. Chachanko's letter also requests that the court either equitably toll his claims and vacate his prior sentence or at least appoint an attorney to help him. *See id.* at 2-3. On April 25, 2017, the court appointed counsel to represent Chachanko. Docket 5. On April 24, 2018, the parties requested permission to file supplemental briefing in this matter in light of the United States Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). This court granted that motion, and briefing is now complete.

## DISCUSSION

Chachanko's brief in support of his motion to vacate, set aside, or correct proceeds in two parts. The first part addresses the issue of whether Chachanko's petition is time barred and whether he is entitled to equitable tolling of his petition. The second part discusses the merits of Chachanko's *Johnson I* claim. In response, the United States moves to dismiss Chachanko's

---

[4] According to the court's calculation, 233 days passed between August 24, 2016, when Chachanko spoke with Steenholdt and first learned that a habeas petition was not filed on his behalf, and April 13, 2017, when he filed his petition.

petition by arguing that the petition is time barred and that Chachanko has not demonstrated that equitable tolling of his petition is warranted. The United States also argues that, even if the court analyzes the merits of Chachanko's petition, his grounds for relief are foreclosed by Eighth Circuit precedent.

## I. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2255(f). The limitation period for habeas claims under § 2255(f) runs "from the latest of—"

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Of those periods, only the third one is relevant here.[5]

The statute of limitation for Chachanko's claim began to run on June 26, 2015, which is the date of the United States Supreme Court's decision in

---

[5] In his initial brief, Chachanko argues that both 28 U.S.C. § 2255(f)(1) and (3) apply to his case. *See* Docket 8 at 5. But his subsequent briefing only addresses the statute of limitations issue under § 2255(f)(3). Thus, the court will also only address § 2255(f)(3).

*Johnson I.* In *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016), the Supreme Court confirmed that its decision in *Johnson I* was a substantive decision that applied retroactively on collateral review. Thus, the statute of limitation period for Chachanko to file a habeas petition under § 2255(f)(3) expired on June 27, 2016.[6]

Here, Chachanko acknowledges that his petition, which was filed on April 13, 2017, was filed outside of the one-year statute of limitation set forth under § 2255(f)(3). Docket 8 at 6. Despite this admission, Chachanko argues that dismissal of his petition is inappropriate because the circumstances surrounding his late filing provide him with a basis for relief under the doctrine of equitable tolling. *Id.*

## II.   Equitable Tolling

The Eighth Circuit has recognized that the doctrine of equitable tolling applies to motions brought under 28 U.S.C. § 2255. *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005). Where the doctrine of equitable tolling applies, it "affords [an] otherwise time-barred petitioner an exceedingly narrow window of relief." *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001). "A petitioner is entitled to equitable tolling only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.' " *Burks v. Kelley*, 881 F.3d 663,

---

[6] Because June 26, 2016—the date that is one year after the Supreme Court's decision in *Johnson I*—fell on a Sunday, June 27, 2016, was the date by which habeas petitions needed to be submitted to be timely under § 2255(f)(3).

666 (8th Cir. 2018) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)), *petition for cert. filed*, -- U.S.L.W. ---- (U.S. June 18, 2018) (No. 17-9495). "The diligence required for equitable tolling is 'reasonable diligence,' not 'maximum feasible diligence.' " *Id.* (quoting *Holland*, 560 U.S. at 653). "An extraordinary circumstance must be beyond a prisoner's control, and rise above a garden variety claim of excusable neglect." *Martin v. Fayram*, 849 F.3d 691, 698 (8th Cir. 2017) (quotations omitted). "Whether equitable tolling is appropriate is a fact intensive inquiry that depends on the totality of the circumstances present in a particular case." *Id.* (citing *Holland*, 560 U.S. at 649-50).

Here, Chachanko raises several arguments to support his contention that equitable tolling of the AEDPA statute of limitation is appropriate. When considered together, the sum of Chachanko's arguments in support of equitable tolling are that: (1) he was diligent in attempting to initially institute a potential habeas action; (2) he continued to be as diligent as possible— considering his background and education—in attempting to present his claim after learning that the FPD did not file a *Johnson I* claim on his behalf; and (3) the numerous circumstances outside of Chachanko's control, which resulted in him filing his petition after the expiration of the one-year statute of limitation under § 2255(f)(3), constitute an extraordinary circumstance. Docket 8 at 10-11; Docket 17 at 2-3.

Having reviewed Chachanko's arguments and the totality of the circumstances presented, the court concludes that equitable tolling is not warranted here because Chachanko has failed to show that he diligently

pursued his rights. In *Williams v. Kelley*, 830 F.3d 770, 773 (8th Cir. 2016), the

Eighth Circuit discussed examples of instances where habeas petitioners show

diligence and where they show a lack of diligence. Specifically, the Eighth

Circuit observed that

> [a] petitioner acts with diligence when, for example, he writes letters
> to his attorney asking her to file a habeas petition, contacts the court
> to learn about the status of his case, seeks to have his attorney
> removed for failure to pursue his case, and files a pro se petition the
> very day that he learns it is late.

*Id.* at 773 (citing *Holland*, 560 U.S. at 653). "In contrast, a petitioner does not

act diligently when he simply assumes that his attorney is working on his case

even though she does not respond to his communication and hangs up on him

when he calls." *Id.* (citing *Muhammad v. United States*, 735 F.3d 812, 817 (8th

Cir. 2013)). The Eighth Circuit has also observed that a petitioner does not act

with diligence where he fails to "use reasonable efforts to discover the facts

underlying his claim." *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th

Cir. 2008). The Eighth Circuit has further noted that, in situations where a

petitioner is uncertain as to whether his attorney filed a habeas claim,

reasonable diligence on the petitioner's part includes contacting the court to

determine if a petition was filed. *See Muhammad*, 735 F.3d at 817 (citing

*Anjulo-Lopez*, 541 F.3d at 819).

Three facts from this case support the court's conclusion that

Chachanko failed to act diligently in pursuing his habeas petition. First,

Chachanko was not only aware of the June 2016 deadline to file a *Johnson I*

claim but he affirmatively acknowledged that he knew about the deadline in the

April 17, 2016 letter that he sent to the FPD. *See* Docket 9-1 at 3 ("Could you please send me some information and paperwork so I could file before the June deadline[?]"). Second, although Chachanko assumed that the FPD filed a *Johnson I* claim on his behalf—because he was never informed that a claim was not filed—he did nothing between June 27, 2016, and August 24, 2016, such as contact the court, to check on the status of his claim. *See Muhammad*, 735 F.3d at 817 (citing *Anjulo-Lopez*, 541 F.3d at 819). And third, Chachanko has not described any steps that he took to pursue his claim in the 233 days—or more than seven months—that passed between August 24, 2016, when Chachanko first learned that the FPD had not filed a motion to reduce his sentence, and April 13, 2017, when Chachanko filed his pro se motion to reduce his sentence. *See Burks*, 881 F.3d at 666-67 (indicating that equitable tolling is not warranted where a petitioner's actions "do not meet the standard of reasonableness" to show that the petitioner pursued his rights with "reasonable diligence"). Thus, because the combination of these three facts indicates a lack of diligence on Chachanko's part to pursue his rights, the court concludes that Chachanko is not entitled to equitable tolling of his claim and that his petition must be dismissed as time-barred.

### III.  The Merits of Chachanko's Claim

Even if the court concluded that Chachanko's petition was entitled to equitable tolling, dismissal of Chachanko's petition would still be necessary because his arguments regarding the merits of his petition are foreclosed by binding Eighth Circuit precedent. Chachanko presents a two-part argument in

support of his motion to correct, set aside, or vacate his prior conviction under 18 U.S.C. § 924(c). The first part of Chachanko's argument is that Hobbs Act robbery, 18 U.S.C. § 1951(a), the companion crime underlying Chachanko's § 924(c)(1) conviction before this court, is not categorically a "crime of violence" within the meaning of § 924(c)(3)(A). The second part of Chachanko's argument is that the residual clause of § 924(c)(3)(B) is unconstitutionally vague.

### A. Chachanko's arguments regarding § 924(c)(3)(A).

Chachanko asserts that Hobbs Act robbery is not categorically a "crime of violence" within the meaning of § 924(c)(3)(A). *See* Docket 8 at 13-24; Docket 17 at 5-9. The core of Chachanko's argument regarding this point is that because the Eighth Circuit's decision in *United States v. Farmer*, 73 F.3d 836 (8th Cir. 1996), was decided before the United States Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson II*), this court is not bound to follow *Farmer. See* Docket 17 at 7-8. Extending that argument, Chachanko further argues that because the court is not bound to follow *Farmer*, in light of *Johnson II*, the court is also not bound to follow the Eighth Circuit's decisions in *United States v. House*, 825 F.3d 381 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 1124 (2017), and *Diaz v. United States*, 863 F.3d 781 (8th Cir. 2017), which both adopted a definition that comes from "dicta" in *Farmer. See id.* Because Chachanko's core argument consists of multiple parts, the court will discuss those various parts below.[7]

---

[7] Central to Chachanko's argument is his view that this court should apply the "categorical approach" to determine whether Hobbs Act robbery is a crime of

### 1. Considering *Farmer*, *House*, and *Diaz* in relation to *Johnson II*

In *Farmer*, 73 F.3d at 842, the Eighth Circuit addressed whether Hobbs Act robbery, as defined in 18 U.S.C. § 1951(b)(1), was "a 'serious violent felony' within the meaning of 18 U.S.C. § 3559(c)(2)(F)[.]" Answering that question in the affirmative, the Eighth Circuit concluded that "Hobbs Act robbery qualifies as a serious violent felony" because "it has as an element the use, attempted use, or threatened use of physical force against the person of another, and, in addition, it involves, by its nature, a substantial risk that physical force [may be used] against the person of another . . . ." *Id.* It is this language from *Farmer* that Chachanko argues is "dicta" and is no longer valid after the Supreme Court's decision in *Johnson II. See* Docket 8 at 19-20; Docket 17 at 7-9.

In *House*, 825 F.3d at 386, the Eighth Circuit was again asked to decide whether Hobbs Act robbery was a "serious violent felony" under § 3559(c). Relying on *Farmer*, the Eighth Circuit affirmed the district court's finding that "House's robbery conviction was a 'serious violent felony' under 18 U.S.C. § 3559(c)(2)(F)(ii)." *Id.* at 386-87 (citing *Farmer*, 73 F.3d at 842). House also argued that his life sentence was unlawful under 18 U.S.C. § 924(c). *Id.* at 387. Rejecting this argument, the Eighth Circuit observed that House was sentenced to life imprisonment under § 3559(c) and not under § 924(c). *Id.* The *House*

_____

violence under § 924(c)(3)(A). Docket 8 at 13-24. Because the court concludes that it is bound by prior Eighth Circuit precedent to reject Chachanko's argument, *see infra* at 16, the court need not address whether the "categorical approach" or the "modified categorical approach" should be used to analyze Chachanko's argument.

court also observed that "even if we analyzed the lawfulness of his sentence under § 924(c), we would be bound by *Farmer* . . . where we concluded that Hobbs Act robbery has 'as an element the use, attempted use, or threatened use of physical force against the person of another.' " *Id.* (quoting *Farmer*, 73 F.3d at 842).

In *Diaz*, 863 F.3d at 782-83, a § 2255 petitioner moved to vacate his prior § 924(c) conviction by arguing that Hobbs Act robbery was not a crime of violence under § 924(c)(3). In bringing his habeas claim, Diaz argued that the right to have his § 924(c) conviction vacated was recognized by the Supreme Court in *Johnson I. Id.* at 782. The district court denied Diaz's claim, but "issued a certificate of appealability because of uncertainty regarding whether the ruling in [*Johnson I*] applies to § 924(c) sentence enhancements." *Id.* at 782-83. On appeal, Diaz—like Chachanko here—argued both that the Supreme Court's decision in *Johnson I* rendered § 924(c)(3)(B) unconstitutionally vague and "that Hobbs Act Robbery does not qualify as a crime of violence under § 924(c)(3)(A)." *Id.* at 783. The Eighth Circuit rejected both of Diaz's arguments. *Id.* As it related to Diaz's argument that Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A), the Eighth Circuit observed that "[l]ike other circuits, we have expressly held that 'Hobbs Act robbery has as an element the use, attempted use, or threatened use of physical force against the person of another,' the operative term in § 924(c)(3)(A)." *Id.* (quoting *House*, 825 F.3d at 387).

The issue facing the Supreme Court in *Johnson II*, was whether a Florida felony battery offense " 'ha[d] as an element the use . . . of physical force against the person of another,' . . . and thus constitute[d] a 'violent felony' under the [ACCA], § 924(e)(1)." *Johnson II*, 559 U.S. at 135 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). In answering this question in the negative, the Supreme Court relied on its prior decision of *Leocal v. Ashcroft*, 543 U.S. 1 (2004), where the Court interpreted the statutory definition of "crime of violence" under 18 U.S.C. § 16(a). *Johnson II*, 559 U.S. at 140. In *Leocal*, the Supreme Court concluded that " '[t]he ordinary meaning of [the term crime of violence], combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes . . . .' " *Leocal*, 543 U.S. at 11; *see also Johnson II*, 559 U.S. at 140 (quoting this portion of *Leocal*). Thus, analogizing to *Leocal*, the Supreme Court concluded in *Johnson II* that "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original).

### 2. Hobbs Act Robbery is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)

Chachanko argues that the Supreme Court's definitions of the terms "violent felony" and "crime of violence" in *Johnson II* conflict with the Eighth Circuit's "dicta" from *Farmer*, 73 F.3d at 842, stating that Hobbs Act robbery qualifies as a "serious violent felony" because "it has as an element the use,

attempted use, or threatened use of physical force against the person of another . . . ." *See* Docket 17 at 7-8. Thus, in Chachanko's view, the Supreme Court's decision in *Johnson II* either calls into question or tacitly repudiates "the dicta in *Farmer*." *Id.* at 8. Additionally, because *Johnson II* was handed down almost 15 years after the Eighth Circuit decided *Farmer*, Chachanko argues that, by extension, *Johnson II* calls into question the validity of *House* and *Diaz*, which both adopted *Farmer's* "dicta." *Id.* at 7-8. Accordingly, Chachanko argues that because this court is not bound by *Farmer*, *House*, or *Diaz*, the court is free to apply the categorical approach and determine whether Hobbs Act robbery constitutes a "crime of violence" within the meaning of § 924(c)(3)(A). *See id.*

Although Chachanko argues that this court writes on a clean slate and is free to disregard the *Farmer*, *House*, and *Diaz* line of cases, the court disagrees. Instead this court will abide by the Eighth Circuit's explicit recognition that prior decisions of the Eighth Circuit are binding "until overruled by [the] court en banc, by the Supreme Court, or by Congress." *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008). Thus, the court concludes that Hobbs Act robbery is a "crime of violence" because it " 'has as an element the use, attempted use, or threatened use of physical force against the person of another,' the operative term in § 924(c)(3)(A)." *Diaz*, 863 F.3d at 783 (quoting *House*, 825 F.3d at 387).[8]

---

[8] Even if this court were free to decide as an issue of first impression whether Hobbs Act robbery was a crime of violence under § 924(c)(3)(A), the court would

### B.  Chachanko's arguments regarding § 924(c)(3)(B).

Chachanko also argues that the residual clause of § 924(c)(3)(B) is unconstitutionally vague. After briefing was submitted, the parties requested permission to file supplemental briefing on the impact of the United States Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). *See* Docket 21. Having reviewed that briefing, as well as the Supreme Court's decision in *Dimaya*, the court concludes that it is bound to follow the Eighth Circuit's decision in *United States v. Prickett*, 839 F.3d 697, 700 (8th Cir. 2016) (per curiam), *cert. denied*, 138 S. Ct. 1976 (2018).

In *Prickett*, the issue addressed by the Eighth Circuit was whether the Supreme Court's decision in *Johnson I*, 135 S. Ct. 2551 (2015) extended to invalidate the residual clause of § 924(c)(3)(B) as unconstitutionally vague. *Prickett*, 839 F.3d at 698. Answering that question in the negative, the *Prickett* court agreed with the majority of circuits that had addressed the question and "conclude[d] that *Johnson* does not render § 924(c)(3)(B) unconstitutionally vague." *Id.* at 700. Because *Prickett* has not been overturned by the Supreme Court or overruled by the Eighth Circuit, the decision in *Prickett* is binding on

---

not reach a different conclusion. Significant in the court's view is the thorough discussion set forth by the Second Circuit in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), which concluded that Hobbs Act robbery is a crime of violence under § 924(c)(3)(A). *See id.* at 60. This court finds *Hill* to be persuasive because it addresses many of the same arguments that Chachanko raises here regarding the impact of the Supreme Court's decision in *Johnson II* and whether the Court's decision in *Johnson II* requires courts to interpret the phrase "physical force" found in § 924(c)(3)(A) to mean "violent," "great," or "strong." *Hill*, 890 F.3d at 57-58.

this court. *M.M. ex rel. L.R.*, 512 F.3d at 459. Thus, the court rejects Chachanko's argument that *Johnson I* renders § 924(c)(3)(B) unconstitutionally vague.

Although the court concludes that it is bound to follow *Prickett*, the court will consider the impact of the United States Supreme Court's recent decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). The question addressed in *Dimaya* was whether the residual clause of the Immigration and Nationality Act, 18 U.S.C. § 16(b), "suffer[ed] from the same constitutional defect" as the similarly worded residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B), that the Supreme Court previously invalidated in *Johnson I. Dimaya*, 138 S. Ct. at 1210. After analyzing § 16(b), the Supreme Court observed that, like the residual clause of the ACCA, "the clause had both an ordinary-case requirement and an ill-defined risk threshold . . . ." *Id.* at 1223. Thus, because "just like ACCA's residual clause, § 16(b) 'produces more unpredictability and arbitrariness than the Due Process Clause tolerates[,]'" the Supreme Court concluded that § 16(b) was similarly void for vagueness. *Id.* (quoting *Johnson I,* 135 S. Ct. at 2558).

The Supreme Court's result in *Dimaya* does not come as a complete surprise. In fact, foreseeing that the Supreme Court could conclude that § 16(b) was void for vagueness, the Eighth Circuit observed in *Diaz*, 863 F.3d at 783 that:

> [t]he Supreme Court has granted certiorari to determine whether *Johnson* affects the validity of 18 U.S.C. § 16(b), a statute with language similar to § 924(c)(3)(B). *Lynch v. Dimaya,* --- U.S. ----, 137

> S.Ct. 31, 195 L.Ed.2d 902 (2016), *granting review of Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). But we conclude the Court's decision in *Dimaya* will not affect Diaz's appeal. Even if § 924(c)(3)(B) is unconstitutionally vague after *Johnson*, Diaz's claim for § 2255 relief is timely only if *Johnson* also invalidates the use-or-threatened-use-of-force clause in § 924(c)(3)(A). No circuit court has held that *Johnson* cast doubt on the validity of statutes that enhance the punishment for crimes involving the use of force. *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 8–11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004).

*Id.*

Following the Supreme Court's decision in *Dimaya*, there is at least a question as to whether § 924(c)(3)(B)'s residual clause is unconstitutionally vague. *See* Docket 23 at 3 (United States's post-*Dimaya* response indicating that "[a]s predicted in *Diaz*, the Supreme Court's holding in *Dimaya* makes the continued validity of § 924(c)(3)(B) unlikely."). Because, however, the Eighth Circuit's decision in *Prickett* has not been overruled, this court will abide by the Eighth Circuit's explicit determination that the Supreme Court's decision in *Johnson I* "does not render § 924(c)(3)(B) unconstitutionally vague." *Prickett*, 839 F.3d at 700. Thus, Chachanko's argument that *Johnson I* renders § 924(c)(3)(B) unconstitutionally vague is denied. Further, even if it is later determined that the residual clause of § 924(c)(3)(B) is unconstitutionally vague, nothing has altered the Eighth Circuit's decision in *Diaz* that Hobbs Act robbery qualifies as a crime of violence under the separate, unaffected "elements clause" of § 924(c)(3)(A). *See Diaz*, 863 F.3d at 783.

## IV. Certificate of Appealability

When a district court denies a petitioner's § 2255 motion, the petitioner must first obtain a certificate of appealability before an appeal of that denial

may be entertained. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that demonstrates "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Here, the court finds that Chachanko has made a substantial showing that his claim is debatable among reasonable jurists, that another court could resolve the issues raised in that claim differently, or that a question raised by that claim deserves further proceedings. Consequently, a certificate of appealability is issued.

## CONCLUSION

The court concludes that Chachanko's petition is time-barred because it was filed outside of the one-year statute of limitation proved under § 2255(f)(3). The also court concludes that Chachanko is not entitled to equitable tolling of his petition because he has failed to show that he diligently pursued his rights. The court further concludes that Chachanko's arguments regarding the merits of his claims are foreclosed by recent Eighth Circuit decisions that this court is bound to follow. Thus, Chachanko's petition is dismissed.

IT IS ORDERED that

1.      The United States's motion to dismiss (Docket 15) is granted.

2. Chachanko's Motion to Vacate, Set Aside, or Correct his sentence (Docket 1) is dismissed.

3. A certificate of appealability is issued on the issues:

    A. Is Chachanko entitled to equitable tolling of the AEDPA statute of limitations?

    B. If so, is Hobbs Act robbery a crime of violence under § 924(c)(3)(A)?

    C. If Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A), then is the residual clause of § 924(c)(3)(B) unconstitutionally vague following the United States Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)?

DATED June 28, 2018.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE